**United States Department of Agriculture**



Food and Nutrition Service

Retailer and Issuance Policy and Innovation Division

Administrative Review Branch

1320 Braddock Place, Fifth Floor Alexandria, VA 22314

Telephone: (617) 565-6417

Fax: (844) 629-0651

robert.deegan @usda.gov

December 29, 2020

Jess M. Berkowitz, Esq.
Attorney at Law
401 Broadway, Suite #806
New York, New York 10013

      **Re:  Essa Deli Grocery**
            **66 Avenue C**
            **New York, New York 10009**
            **Case Number:  C0188678**

Dear Counselor:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture (USDA) Food and Nutrition Service (FNS), in response to the request for administrative review postmarked October 19, 2020.  Also included therein is a statement regarding applicable rights to a judicial review.

The USDA has decided that there is sufficient evidence to support the determination by the Office of Retailer Operations and Compliance to impose a six month disqualification against Essa Deli Grocery from participating as an authorized retailer in the Supplemental Nutrition Assistance Program.

Sincerely,



ROBERT T. DEEGAN
Administrative Review Officer

Enclosure:  Final Agency Decision

cc:  Essa M. Ali, Owner

USDA is an Equal Opportunity Provider, Employer, and Lender

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative Review Branch**

Essa Deli Grocery,

Appellant,

v.                                                    Case Number:  C0188678

Office of Retailer Operations and
Compliance,

Respondent.

## FINAL AGENCY DECISION

The U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS), finds that there is sufficient evidence to support the determination by the Office of Retailer Operations and Compliance to impose a six month disqualification against Essa Deli Grocery (hereinafter Appellant) from participating as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP).

## ISSUE

The issue accepted for review is whether the Office of Retailer Operations and Compliance took appropriate action, consistent with Title 7 of the Code of Federal Regulations (CFR) § 278.6(a), § 278.6(e)(5 and 6), and § 278.6(f)(1) in its administration of the SNAP when it imposed a six month period of disqualification against Appellant.

## AUTHORITY

According to 7 U.S.C. § 2023 and the implementing regulations at 7 CFR § 279.1, "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may . . . file a written request for review of the administrative action with FNS."

## CASE CHRONOLOGY

A USDA investigator conducted an investigation of the compliance of Appellant with federal SNAP law and regulations during the period March 31, 2016, through April 7, 2016.  The investigation determined that personnel at the Appellant firm accepted SNAP benefits in exchange for ineligible merchandise on five separate occasions.  All five transactions were deemed clearly violative and warrant a six month disqualification period.  The items sold are best

1

described in regulatory terms as common nonfood items such as laundry detergent and also included loose cigarettes in Exhibit F. The investigative report indicates that these violative transactions were handled by three different clerks. The report notes that a fourth clerk refused to exchange SNAP benefits for an ineligible item in Exhibit C. The report also notes that one of the violative clerks told the investigator that SNAP benefits could not be used to purchase laundry detergent in Exhibit E, but subsequently did allow the purchase using SNAP and charging an extra $0.99. This same clerk refused to exchange SNAP benefits for cash in Exhibit F, but did allow the purchase of loose cigarettes in exchange for SNAP benefits. This clerk did refuse to exchange SNAP benefits for cash and for loose cigarettes in Exhibit G.

As a result of evidence compiled from this investigation, the Office of Retailer Operations and Compliance informed Appellant, in a letter dated August 18, 2016, that the firm was charged with violating the terms and conditions of the SNAP regulations, 7 CFR § 278.2(a). The letter states, in part, that the violations ". . . warrant a disqualification period of six months (Section 278.6(e)(5)). The letter also states that under certain conditions, FNS may impose a civil money penalty (CMP) in lieu of a disqualification (Section 278.6(f)(1))."

Appellant through counsel, responded to the charges in a letter dated August 29, 2016, that also included a request for information under the Freedom of Information Act (FOIA). The agency responded to the FOIA request by correspondence dated September 26, 2016. Counsel for Appellant appealed the FOIA response on January 9, 2017. It is noted for the record that Appellant's original counsel passed away and was replaced by the current counsel effective July 8, 2019. The agency responded to the FOIA appeal in correspondence dated August 26, 2020. A letter dated September 2, 2020, was issued by the Office of Retailer Operations and Compliance advising current counsel that it had 10 days to submit any additional information following receipt of the FOIA appeal response. No additional information was received.

After giving consideration to the evidence, the Office of Retailer Operations and Compliance notified Appellant in a letter dated October 13, 2020, that it determined that violations had occurred at the firm, and that a six month period of disqualification from participating as an authorized firm in SNAP was warranted. This determination letter also states that Appellant's eligibility for a hardship CMP according to the terms of Section 278.6(f)(1) of the SNAP regulations was considered. However, the letter stated ". . . you are not eligible for the CMP because there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices."

By letter postmarked October 19, 2020, Appellant, through counsel, appealed the Office of Retailer Operations and Compliance's decision and requested an administrative review of this action. The appeal was granted and implementation of the sanction has been held in abeyance pending completion of this review. No subsequent correspondence was received.

## STANDARD OF REVIEW

In an appeal of an adverse action, Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed. That means Appellant has the burden

of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.

## CONTROLLING LAW

The controlling law in this matter is contained in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2021), and implemented through regulation under Title 7 CFR Section 278. In particular, Sections 278.6(a) and (e)(5) establish the authority upon which a six month disqualification may be imposed against a retail food store or wholesale food concern.

7 CFR § 271.2 states that: Eligible foods means any food or food product intended for human consumption except alcoholic beverages, tobacco, and hot food and hot food products prepared for immediate consumption.

7 CFR § 278.2(a) states that: Coupons [SNAP benefits] may be accepted by an authorized retail food store only from eligible households, and only in exchange for eligible food. Further, the citation specifies that coupons may not be accepted in exchange for cash, in payment of interest on loans, or for any other nonfood use.

7 CFR § 278.6(a) states that: FNS may disqualify any authorized retail food store . . . if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations.

7 CFR § 278.6(e)(5) states that: a firm is to be disqualified for six months if it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management.

7 CFR § 278.6(f)(1) states that, "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices. FNS may disqualify a store which meets the criteria for a CMP if the store had previously been assigned a sanction. A CMP for hardship to SNAP households may not be imposed in lieu of a permanent disqualification.

## APPELLANT'S CONTENTIONS

The following may represent a summary of Appellant's contentions in this matter; however, in reaching a decision, full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced herein:

- The firm is open 24/7 with four full-time employees. The owner can't be present at all times and must rely on its employees. The owner has trained his employees since being

3

authorized.  The owner has an unblemished SNAP record and denies the incidents took place;

- The USDA based its decision on seven transaction reports during an eight day period wrongfully concluding that the firm accepted SNAP benefits in exchange for ineligible nonfood items.  The owner vehemently denies that he or any employee engaged in such activities and would not jeopardize his business and livelihood by risking a six month disqualification;
- The transaction reports do not identify the clerks by name or their relationship to the owner.  All of the times have been redacted preventing the owner from being able to tell which clerk was on duty during the violation.  The identity of the investigator has also been redacted preventing the owner from knowing if there was one or multiple investigators.  No cash register receipts were provided according to the reports even though the owner has informed counsel that all items are priced and receipts provided.  Without these receipts, there is no proof that any sale occurred.  The report admits that a clerk refused to sell detergent to the investigator in Exhibit C and that cash and loose cigarettes were denied in Exhibits F and G;
- The owner has informed counsel that it has continuously trained and tested its employees concerning SNAP requirements and established and implemented an effective compliance program that was in effect at the time of the alleged charges.  The owner has also maintained an exemplary record with this being the first instance of any violations by the firm.  The firm has met the requirements in Section 278.6(i);
- The firm is open 24/7 and realizes 50 percent of revenues from SNAP.  Any disqualification will so adversely affect the business that it will cause irreparable injury and damage to the owner by forcing him to go out of business due to the loss of revenue.  A disqualification would also cause hardship to participating households; and,
- If FNS determines that the firm and owner violated SNAP regulations, then FNS should impose a CMP in lieu of disqualification as it would be a violation of due process to prosecute the owner for alleged transactions that occurred without any warning letter.  This is within FNS' discretion as a disqualification in this case would be cruel and unusual punishment.

Appellant submitted no evidence or other rationales in support of these contentions.

## ANALYSIS AND FINDINGS

Regarding Appellant's denial, it is important to clarify for the record that the purpose of this review is to either validate or to invalidate the earlier decision of the Office of Retailer Operations and Compliance and is limited to what circumstances were at the basis of the action at the time such action was made.  In an appeal of an adverse action, the Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed.  That means the Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.  Assertions that the firm has not violated program rules, by themselves and without supporting evidence and rationale, do not constitute valid grounds for dismissal of the current charges of violations or for

4

mitigating their impact.  When store ownership signed the certification page of the SNAP retailer authorization application to become a SNAP retailer, it confirmed it understood and agreed to abide by program rules and regulatory provisions.  It also agreed to accept responsibility on behalf of the firm for SNAP violations including those committed by any of the firm's employees, paid or unpaid, new, full-time or part-time.  The certification is clear that store ownership understood by signing the document that violations of program rules can result in administrative actions such as fines, sanctions, withdrawal, or disqualification from the SNAP. Additionally, a claim of having a record of participation in SNAP with no previously documented instance of violations does not constitute valid grounds for dismissal of the current charges of violations or for mitigating the impact of those charges.

The FNS investigative report shows that three employees working at the Appellant firm accepted SNAP benefits for ineligible items on five separate occasions during the investigative period indicating an ongoing pattern of SNAP violations as defined by Section 271.2 of the SNAP regulations.  The report shows that the nature and scope of the violations under review do violate SNAP regulations, and the transaction amounts cited in the report also match FNS transaction records for the dates in question.  Additionally, a review of the report shows no errors or discrepancies.  There is no regulatory threshold for the dollar value of the ineligible items purchased or for the timeframe in which they were purchased.  The acceptance of SNAP benefits for ineligible items is a violation of SNAP rules and regulations.  The ineligible items sold were obvious nonfood items and would not readily be confused with eligible edible food items.  SNAP regulations explicitly state that FNS shall disqualify a store for a six month period if it is to be the first sanction for the firm, and the evidence shows that personnel of the firm have committed violations such as the sale of common nonfood items in exchange for SNAP benefits due to carelessness or poor supervision by the firm's ownership or management.

SNAP benefits, in general, are only authorized to be used for the purchase of foods for the household to eat as well as seeds and plants which produce food for the household to eat.  The common nonfood items purchased are clearly not edible foods and are not plants or seeds, so one has to question the level of training these employees received by store ownership and/or management.  The basic concept of "if you can't eat it, you can't buy it using SNAP" is not a difficult one for employees to grasp, yet these employees allowed the purchase of ineligible items using SNAP benefits on multiple occasions.  Had an effective compliance policy and program been in effect at the firm, it is unlikely that these employees would have made such obvious mistakes.  The more likely explanation is that store ownership and/or management failed to properly train and subsequently supervise these employees.  Additionally, had store ownership and/or management been supervising these employees through occasionally monitoring them using videotape, if available, or in person, it would have readily noticed that they were allowing the sale of ineligible nonfood items in exchange for SNAP benefits.  It also would have been immediately evident to store ownership and/or management that these employees were deficient in their knowledge of SNAP rules and regulations had it periodically spot checked their knowledge and abilities by asking questions about SNAP eligible/ineligible items.  Either of these basic supervisory techniques would have provided a no cost method for store ownership and/or management to ensure that store employees were not putting the firm's SNAP license at risk.  These are clear signs of poor or no supervision by store ownership and/or management.

It is highly improbable, based on the willingness of these employees to exchange SNAP benefits for ineligible nonfood items, that the only instances of SNAP violations were those transactions identified as part of the FNS undercover investigation.  Common sense dictates that these actions more likely than not represented an ongoing pattern of SNAP violations at the Appellant firm. As previously stated, store ownership is responsible for all SNAP transactions at the firm and therefore a certain minimal level of oversight and training on the part of ownership to ensure employees, especially new employees, are not violating SNAP laws or regulations is expected.  It would be unusual and irresponsible for store ownership to not have a program of ongoing supervision of employee performance and conduct by periodically monitoring store transactions, including those involving SNAP, and reviewing daily balance sheets to ensure store employees were not stealing from the firm or conducting other activities that would jeopardize the licenses and income that the firm is dependent upon.  Under SNAP regulations, the penalty for allowing the purchase of ineligible nonfood items using SNAP benefits as the result of poor supervision by ownership or management is a six month disqualification.  The regulations do allow SNAP retailers to pay a hardship CMP, if eligible, as explained in the next section.

Appellant is correct that the firm has no previous history of SNAP program violations or warnings.  However, this does not necessarily mean that the firm has not been conducting violative transactions.  Neither FNS nor Appellant has sufficient data to conclusively prove that the firm was or was not conducting violative transactions prior to the start of the undercover investigation.  However, the matter under review is the first time that the firm has been investigated by FNS and the results of the investigation showed SNAP violations conducted by three different employees in five of the seven visits to the firm.  While it is not definitive, it can be readily inferred that violative transactions were more likely than not occurring in previous months based on these investigatory visits.

Regarding Appellant's other contentions, no statutory or regulatory requirements exist for investigative personnel to positively identify store employees that have committed violations of SNAP rules and regulations.  The descriptions contained in the Report of Positive Investigation are provided only to assist store ownership in identifying those employees responsible for the violative transactions.  Many variables can affect the description of an employee (e.g. whether the employee was sitting or standing or on a platform, the fit of their clothing, changing hair styles/lengths/colors, etc.) so these descriptions may not be one hundred percent accurate which does not mean that the violations did not occur.  Disclosing the identity of investigative personnel would cause a clearly unwarranted invasion of personal privacy.  The store entry/exit times could also be used to identify investigative personnel and cannot be provided.  The owner's denial of cash register tapes not being provided to the USDA investigator does not constitute valid grounds for dismissal of the current charges of violations or for mitigating their impact. SNAP regulations do not establish any minimum dollar amount that exchanges of SNAP benefits for common ineligible nonfood items must exceed in order to be considered violative therefore any allegations that transactions involving "insignificant amounts" not being credible are baseless.  There are no requirements in existing FNS regulations that require stores suspected of trafficking or misusing SNAP benefits be provided with a written or verbal notification that violations of SNAP regulations may be occurring and the potential penalties.  Warning letters are

6

issued in those situations where the SNAP violations are of a limited nature that would not warrant a disqualification and therefore would not have been appropriate in this situation.  The redacted investigative report does show that a single investigator conducted the seven visits to the Appellant firm.

With regards to the contention that Appellant's rights to due process were violated, section 278.6(b)(1) of the SNAP regulations provides that upon charging a firm with SNAP violations, the letter informing the firm of the charges "shall inform the firm that it may respond either orally or in writing to the charges contained in the letter within 10 days of receiving the letter."  This section further states that, "Any firm considered for disqualification, shall have full opportunity to submit to FNS information, explanation, or evidence concerning any instances of noncompliance before FNS makes a final administrative determination."  A review of Retailer Operations' administrative actions regarding this matter indicates full compliance with applicable SNAP regulations, policies, and procedures.  This disqualification is an administrative action and SNAP regulations provide for an administrative review of the action.  The Act and regulations provide that any firm aggrieved by an administrative review determination may seek judicial review of the determination in Federal court or a State court of record having competent jurisdiction.  In such event, trial de novo proceedings ensure the firm of a full evidentiary hearing on the agency action at issue.

Based on this discussion, the decision by the Office of Retailer Operations and Compliance to disqualify the firm for a six month period was the appropriate penalty and there is no valid basis for dismissing the charges or for mitigating the penalty imposed.

It is recognized that some degree of economic hardship is a likely consequence whenever a store is disqualified from participation in SNAP.  However, there is no provision in the SNAP regulations for waiver or reduction of an administrative penalty assessment on the basis of possible economic hardship to the firm or to ownership resulting from imposition of such penalty.  To allow ownership to be excused from an assessed administrative penalty based on purported economic hardship to the firm would render virtually meaningless the enforcement provisions of the Food and Nutrition Act of 2008, as amended, and the enforcement efforts of the USDA.  Furthermore, giving special consideration to economic hardship to the firm would forsake fairness and equity, not only to competing stores and other participating retailers who are complying fully with program regulations, but also to those retailers who have been disqualified from the program in the past for similar violations.  Therefore, Appellant's contention that the firm may incur economic hardship based on the assessment of an administrative penalty does not provide any valid basis for dismissing the charges or for mitigating the penalty imposed.

## CIVIL MONEY PENALTY

Appellant is not eligible for a trafficking CMP as these only apply in cases of permanent disqualifications.  The matter under review is a term disqualification of six months and does not involve trafficking therefore a trafficking CMP cannot be considered under 7 CFR § 278.6.

7

A hardship CMP as an optional penalty in lieu of a six month disqualification was considered in this case.  Such a finding is appropriate only if a store sells a substantial variety of staple food items and its disqualification would create a hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices.  FNS records show there are at least 56 comparably sized or larger SNAP retailers located within a 0.5 mile radius of Appellant's location that includes three super stores, four supermarkets, seven medium grocery stores, nine small grocery stores, and 33 convenience stores with the closest supermarket less than two blocks away.  All of the comparable stores stock adequate varieties of food in all four staple food categories and in perishables as required by FNS.

The nearby stores appear readily accessible to SNAP recipients and offer a variety of staple foods comparable to, or better than, those offered by Appellant.  It is acknowledged that some level of inconvenience to SNAP users is inherent in the disqualification from SNAP of any participating food store as the normal shopping pattern of such SNAP benefit holders may be altered.  Inconvenience, however, does not rise to the level of hardship required by the regulations.

## CONCLUSION

A review of the evidence in this case supports that the program violations at issue did occur as charged.  As noted previously, the charges of violations are based on the findings of a formal USDA investigation.  All transactions cited in the letter of charges were conducted by a USDA investigator and signed under penalty of perjury.  A review of this documentation has yielded no indication of error or discrepancy in any of the reported findings.  Rather, the investigative record is specific and accurate with regard to the dates of the violations, the specific ineligible merchandise sold in exchange for SNAP benefits, and in all other critically pertinent detail.  Accordingly, the determination by the Office of Retailer Operations and Compliance to impose a disqualification of six months against the Appellant firm from participating as an authorized retailer in SNAP is sustained.  Furthermore, the Office of Retailer Operations and Compliance properly determined that Appellant was not eligible for a hardship CMP according to the terms of Section 278.6(f)(1) of the SNAP regulations as there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices.

In accordance with the Food and Nutrition Act, and the regulations thereunder, this penalty shall become effective thirty (30) days after receipt of this decision.  A new application for SNAP participation may be submitted ten (10) days prior to the expiration of the six month disqualification period.  When eligible, Appellant may reapply for SNAP authorization using the application instructions contained on the FNS web site.  Questions regarding the application process can be answered by the FNS Retailer Service Center at 877-823-4369.

**RIGHTS AND REMEDIES**

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7.  If a judicial review is desired, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction.  This complaint, naming the United States as the defendant, must be filed within thirty (30) days of receipt of this decision.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate.  FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

ROBERT T. DEEGAN                                    December 29, 2020
ADMINISTRATIVE REVIEW OFFICER